UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON PERRY,<br><br>        Petitioner,<br>vs.<br><br>KEVIN CHAPPELL, as Acting Warden of San Quentin State Prison,<br><br>        Respondent. | Case No. 1:11-cv-01367 AWI<br><br>DEATH PENALTY CASE<br><br>ORDER GRANTING PETITIONER'S MOTION FOR EQUITABLE TOLLING<br><br>DATE:      June 25, 2012<br>Courtroom   2<br>ORAL ARGUMENT WAIVED |

      Petitioner Clifton Perry ("Perry") moves for equitable tolling of the one-year statute of limitations under 28 U.S.C. § 2244(d) by 60 days beyond the current date of July 27, 2012. His primary justification is the need allow his retained ballistics expert to perform ballistics testing to support his claim that trial counsel was ineffective for not retaining a ballistics expert. Testing by the ballistics expert must await a decision by the Kings County Superior Court on Perry's pending motion for release of evidence. Respondent Kevin Chappell, as Acting Warden of San Quentin State Prison (the "Warden") opposes the present motion. The State of California (representing the same interests as the Warden herein) opposes Perry's motion before the Kings County Superior Court.

**I.    Background**

      Perry's conviction and sentence were affirmed by the California Supreme Court on April 24, 2006 for the July 9, 1995 murder of Saeed Nasser, the 47-year old owner of a convenience store in Hanford. *People v. Perry*, 38 Cal. 4th 302 (2006). Based on the testimony of an officer at the scene of the shooting about bullet trajectory, the trial prosecution theory was, in part, that Perry shot the victim multiple time in cold blood. Perry's theory is that he emptied his gun randomly throughout the store

after being startled by the victim as a result of his (Perry's) underlying stress, hypervigilance, and dissociation.

Perry's conviction became final on July 27, 2011 when his state habeas petition, filed October 10, 2005, was denied.  Perry commenced this action on August 16, 2011 with requests for appointment of counsel, to proceed in forma pauperis, and a for a stay of execution.  The first two requests were granted and the stay was denied without prejudice on August 18, 2011.  After receiving a recommendation for the Eastern District of California Selection Committee, the Court appointed CJA panel attorneys D. Jay Ritt and Verna Wefald as Perry's attorneys of record on October 4, 2011.  The Court approved a Phase I budget on November 7, 2011 and a Phase II budget on December 21, 2011, as amended June 11, 2012.

In Phase I Mr. Ritt and Ms. Wefald spent the allotted several weeks obtaining and reviewing the files and pleadings so they could determine what work needed to be accomplished in order to present a cogent briefed petition.  In Phase II, which commenced on December 1, 2011, the Court approved six categories of ancillary service providers, four of which have been utilized by Mr. Ritt and Ms. Wefald.  Those four ancillary service providers are: a paralegal, an investigator, a mitigation specialist, and ballistics expert, Mr. Bryan Burnett.  The June 11, 2012 amended budget provided more time for Perry's investigator to interview and obtain statements from 19 witnesses who had not been interviewed previously, but which Perry's attorneys have identified as important for mitigation issues.

**II.   Facts Relevant to the Present Motion**

Mr. Ritt's billing statements disclose that he contacted Mr. Burnett December 1, 2011, January 27, 2012, February 2, 2012, and April 11, 2012.  Exhibit A to motion before the Kings County Superior Court (attached to Perry's moving papers herein) is a letter over Mr. Burnett's signature to Mr. Ritt dated May 8, 2012, in which Mr. Burnett asks to conduct a nondestructive ballistics examination of specified trial exhibits in order to "reconstruct" the crime scene in support Perry's advanced theory about shooting randomly.

On May 31, 2012, Perry's attorneys transmitted a draft of the proposed state motion to counsel for the Warden herein and the State of California in state proceedings, Deputy Attorney General Jennevee H. DeGuzman.  (Exhibit B to the state motion.)  On June 4, 2012, Ms. DeGuzman responded

that the Warden would oppose the state motion as premature until this Court finds that the decisions of the California Supreme Court were unreasonable under 28 U.S.C. § 2254(d).  (Exhibit C to the state motion.)  The Superior Court set the hearing date for July 9, 2012, and Perry filed the state motion on June 7, 2012.   The opposition of the Warden/State is not due until July 2, 2012.

### III.    Standard for Granting Equitable Tolling

The parties agree that the Supreme Court decision in *Holland v. Florida*, 130 S. Ct. 2459 (2010), is controlling.  Under *Holland*, a petitioner is entitled to equitable tolling upon a showing: "(1 ) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way an prevented timely filing."  *Id*. at 2462 (quoting *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005); internal quotation marks omitted).  *Holland* further notes that a decision to grant equitable tolling must be made on a "case-by-case" basis and that courts entertaining such motions should exercise "flexibility" to avoid "mechanical rules."  *Id*. at 2563.

### IV.    Perry's Argument

Perry gives two reasons justifying equitable tolling.  The first is the delay of 69 days in the appointment of counsel.  The second is the fact that his ballistics expert needs to examine the trial exhibits before rendering an opinion.  He argues he has satisfied the requirements for equitable tolling under *Holland*.

With respect to diligence, Perry points out that his attorneys have thoroughly reviewed and digested the record.  In conducting the record review, his attorneys have identified 19 important witnesses yet to be interviewed, and have determined that the services of a ballistics expert is necessary to factually support the claim of ineffective assistance of counsel as to trial evidence adduced about the manner in which the victim was shot.

Regarding the "extraordinary circumstance" element, Perry argues the date for the hearing on the motion pending before the Kings County Superior Court, that is, July 9, 2012, was the earliest he could obtain from the Court.  In addition, he notes that due to some emotional difficulties he has experienced requiring medical attention, his attorneys have experienced difficulty communicating with him over the last several months.

## V.  The Warden's Opposition

The Warden first points out the policy reasons underlying the statute of limitations, that is to reduce delay, encourage petitioners to seek relief from state courts in the first instance, and protect the finality of state court judgments. In making this argument, the Warden stresses that petitioners are to perfect their cases before reaching federal court, and not simply make a second-rate effort at the state level. Next, the Warden complains that the Court's view of Perry's diligence, as stated in the order granting Perry's application to shorten time for hearing on the within motion, is based in part on confidential documents. He contends that if the Court is basing case management and legal decisions on confidential submissions he should be given an opportunity to be heard on the matters therein presented. Finally, he argues that Perry has not demonstrated "extraordinary circumstances" mandated to trigger equitable tolling.

This latter argument is based on the premise that in light of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), there should be no factual development of new claims or existing claims because the federal petition should not exceed the allegations and legal arguments presented on state habeas. Thus, whatever investigation Perry is conducting, including ballistics testing, does not and cannot amount to an extraordinary circumstance justifying tolling.

## VI.  Perry's Reply

In reply, Perry makes several arguments. First, he points out that a 60-day extension of the limitations period would not prejudice the Warden. To the contrary, he argues, the extra time requested will enable his attorneys to streamline the already exhausted claims presented in unusually lengthy state court pleadings. Second, he emphasizes that his deteriorating mental health has had a negative impact on attorney-client communication, thus rendering investigation more difficult. He identifies this point as an extraordinary circumstance. Third, he states that his litigation team has exerted great effort to obtain numerous missing documents from the Kings County Superior Court, largely through the diligence of the paralegal assigned to the case. He also identifies this fact as an extraordinary circumstance. Finally he notes that the Court already has authorized funding for ballistics expertise in the case.

**VII.     Discussion**

In the June 11, 2012 order shortening time (doc. 30), the Court already has found Perry diligent in the prosecution of his claims. The Warden's objection that this finding was in part predicated on confidential submissions is well taken. The Background section herein outlines the relevant proceedings which inform the Court's view of Perry's diligence. In all other respects, the Court is unpersuaded by the Warden's legal arguments.

The Court also is unpersuaded by Perry's argument that the Warden will suffer no prejudice on account of the requested 60-day tolling. Even taking into account Perry's argument that the extra time will benefit the Warden as well as the Court because it will enable his attorneys to prepare a more concise brief, his point is inapposite to the standard for granting equitable tolling. Prejudice is not a factor in the analysis at all. Moreover the references to his mental and emotional impairments which complicate attorney client communications are too vague to justify a finding of extraordinary circumstances.

The Court is persuaded, however, that efforts of Perry's litigation team, particularly the retained paralegal, to reconstruct the trial record in light of missing files at the Kings County Superior Court amply supports the previous finding of diligence. The fact that these efforts were necessary also is an extraordinary circumstance wholly beyond Perry's control. Now that the files and evidence has been located and reviewed, it is logical to the Court that Perry's ballistics expert would now have access to them in order to provide a factual basis for his analysis. Perry's present attorneys are new to the case and have had to immerse themselves in a lengthy record. That they did not discover missing exhibits and other trial materials immediately upon their appointment does not vitiate the Court's finding of diligence or diminish the importance of previously unknown evidence to the concept of extraordinary circumstances. The final element of extraordinary circumstances is the Warden's opposition to Perry's efforts to gain access to the trial exhibits in the Kings County Superior Court. If the Warden had stipulated to the release of the exhibits, the 39-day delay between the email from Mr. Ritt to Ms. Jennevee on May 31, 2012, until the scheduled hearing date on July 9, 2012, would not have transpired. Both diligence and extraordinary circumstances are present.

The remaining issue to be resolved is the Warden's claim that *Pinholster* proscribes all pre-petition factual development. To gain insight as to whether Mr. Burnett should be permitted to examine and test the trial evidence to factually develop the theory about the manner in which Perry killed the victim, the Court has turned to the state pleadings.

In Claim VI A of the state petition, Perry argued ineffective assistance of trial counsel for failure to adequately investigate and challenge the forensic evidence presented about bullet trajectories that supported the prosecution theory of intentional killing. Separately, Claim VI A also presents a claim of ineffective assistance of counsel for trial counsel's failure to retain and introduce testimony of a ballistics expert. In the body of the state petition argument on the missing ballistics expert sub-claim, Perry cites to several treatises authored by different forensic experts. In the informal response, the State addressed this latter argument, labeling it simply as insufficient because Perry provided "no proffer from an expert to undermine the testimony provided at trial." Claim VI was denied on the merits in the Supreme Court's ruling on the state petition. Apparently, the State's argument was well-taken by the state court.

On federal habeas, federally appointed counsel decided soon after their appointment that a ballistics expert was necessary to provide the proffer state habeas counsel did not. Limited pre-petition investigation of this claim is available. Although under *Pinholster*, the Court will not and did not authorize pre-petition factual development of fully exhausted claims, pre-petition investigation may be authorized and was authorized in the present case where additional factual bases exist to augment partially exhausted state claims. *See Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008). Essentially, the Warden is now opposing Perry's efforts to do exactly what the State claimed he should have done during the state proceedings. The Warden further suggests this failure may be attributable to a "second-rate effort" in developing claims on state habeas. The fact that state habeas counsel did not utilize his limited funding for a ballistics expert during state habeas proceedings, however, in no way validates the Warden's suggestion that Perry's state habeas petition might be considered to be a "second-rate effort." To the contrary, the state petition is an extremely detailed and lengthy document. The more likely reason a ballistics expert was not utilized on state habeas is the limitation on state funding. The Court as well as both parties are aware that state funding for habeas claims development is limited and invariably

exhausted. As guided by the limitations of *Pinholster*, the Court has authorized the investigation now under consideration and affirms the propriety of that authorization.

**VIII. Order**

Having authorized funds for the ballistics expert, and in light of the set backs members of Perry's litigation team have encountered in gaining access to relevant trial exhibits to complete his investigation, the Court grants limited equitable tolling for 39 days. This time frame represents the delay between Perry's notifying the Warden he would be filing his motion to release exhibits in the Kings County Superior Court and the hearing date.

IT IS SO ORDERED.

Dated:   June 27, 2012

                                              /s/ Anthony W. Ishii
                                               Anthony W. Ishii
                                        United States District Judge