UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON PERRY,<br><br>        Petitioner,<br><br>   v.<br><br>KEVIN CHAPPELL, Warden San Quentin California State Prison,<br><br>        Respondent. | Case No.: 1:11-cv-01367 AWI<br><br>ORDER  DIRECTING RESPONDENT TO SUBMIT SUPPLEMENTAL BRIEF<br><br>HEARING: JUNE 3, 2013<br>VACATED |

This matter is before the Court on the motion of Petitioner Clifton Perry ("Perry") to hold federal proceedings in abeyance pending exhaustion in state court of evidence developed during federal investigation. The motion pertains to Claims 4, 5, and 6 of Perry's federal petition. Respondent Kevin Chappell, Warden of California State Prison at San Quentin, (the "Warden") opposes the motion. Before issuing a final ruling on the motion, the Court requests further briefing from the Warden.

I.  **Background**

Perry was convicted of capital murder and sentenced to death for the robbery murder of convenience store operator Saeed Nasser. The trial defense theory during guilt proceedings was that Perry was not the shooter and witnesses misidentified him. At penalty proceedings, Perry took the

1

stand and admitted that he shot the victim, but testified he did not mean to do so. In state and federal post-conviction proceedings the issue is whether Perry shot randomly after being startled or shot the victim intentionally as the trial prosecutor argued. Mental disorders and impairments also play a significant role in post-conviction proceedings particularly with respect to penalty phase mitigation.

## II. Case Procedural History

Perry was sentenced to death by the Kings County Superior Court on July 24, 1996. On April 24, 2006, the California Supreme Court affirmed his conviction and sentence on direct appeal. State appointed habeas counsel, Gary Wells, timely filed Perry's state post-conviction petition on October 20, 2005. The California Supreme Court denied claims that are the bases for federal Claims 4, 5, and 6 on the merits, without a procedural default on July 27, 2011. Perry commenced this action on August 16, 2011. Following the grant of a contested motion for equitable tolling, Perry's federal petition was filed on September 4, 2012.

## III. Summary of the Claims at Issue

Federal Claims 4, 5, and 6 are fashioned from State Claims VI, VII, VIII, IX, and X, with substantial consolidation in the process.

### A. Claim 4

Claim 4 alleges that Perry's trial counsel failed to adequately investigate and challenge forensic evidence at the crime scene – in particular, evidence supporting Perry's contention that he did not deliberately shoot and kill the victim.[1] This claim relates not only to trial counsel's failure to object to the ballistics testimony of a deputy sheriff who Perry claims was unqualified to testify as an expert, but also for his failure to employ his own ballistics expert to testify on Perry's behalf. On state habeas Perry alleged the operative facts and supported his claim with available treatises and documentary

---

[1] This claim is predicated on State Claim VI which alleged Perry was denied the right to effective assistance of counsel at the guilt phase when trial counsel failed to adequately investigate and challenge guilt evidence.

2

evidence. On federal habeas, Perry has presented the declaration and report of ballistics expert Bryan Burnett as evidentiary support for Claim 4.

### B. Claim 5

Claim 5 alleges trial counsel performed deficiently and prejudicially for his failure to develop mitigation evidence concerning Perry's background and social history.[2] Specifically, Perry alleges his trial attorney failed to present evidence that his childhood was characterized by extreme poverty, malnutrition, mental illness, physical abuse, neglect, substance abuse and violence, and yet in spite of this background, Perry thrived in institutionalized settings, was studious and athletic, and performed good deeds. In addition, trial counsel failed to present evidence that Perry was remorseful for the crime.

In support of these same allegations during state post-conviction proceedings, Perry presented "a number" of witness declarations and statements to his social historian Ariel Tomioka, and she, in turn, provided a lengthy declaration supporting the state petition. In support of federal Claim 5, Perry now provides witness statements described in the declaration of federal investigator Zora Colakovic, including five witnesses familiar with Perry's formative years in Los Angeles, and six witnesses who knew Perry while he was attending junior college in Hanford, including his wife Ernestine Perry, relatives of his wife, and college friends.

### C. Claim 6

Claim 6 faults trial counsel for not retaining mental health experts to evaluate Perry for mental illness, despite evidence of mental illness in his family and symptoms of mental illness evident in his

---

[2] This claim is based on and consolidates four claims from the State petition alleging ineffective assistance of trial counsel during penalty proceedings for his failure to develop and present: mitigation evidence concerning Perry's background and social history (Claim VII); evidence of childhood neglect, abuse, trauma, and mental illness (Claim VIII); evidence of Perry's lifelong history of drug and alcohol abuse and addiction (Claim IX); evidence of Perry's positive character and qualities (Claim X).

"medico-social history" as well as by his behavior in connection with the capital offense here at issue.[3] He alleges his mother was a prostitute who sold her body for drugs to be consumed by her boyfriend/pimp and her. Incest, rape, prostitution, and domestic violence were common place among Perry's maternal aunts. The abuse and malnutrition Perry suffered as a child also was visited upon his cousins, many of whom also were removed from their abusive and neglectful parents. He claims that the familial pattern of negative life events were both causes and symptoms of mental illness. The diagnosed mental disorders among Perry's family members include alcohol abuse, substance abuse, schizophrenia, bipolar disorder, and depression. He alleges that his "genetic vulnerabilities" and negative conditions rendered him "highly susceptible to the development of serious psychopathologies." In his social history prepared by Ms. Tomioka during state proceedings, Perry claims to have demonstrated symptoms consistent with PTSD, bipolar disorder, borderline personality disorder, and substance abuse.

    He argues the presence of this information should have prompted trial counsel to retain mental health experts to educate counsel on the likelihood Perry suffered from any of these disorders and to provide expert testimony at the penalty phase about the effect these conditions had at the time of the crime. In support of this claim, as pleaded in the state petition (Claim VIII), Perry set out the pertinent facts and cited to available professional literature. On federal habeas, Perry additionally has provided the declarations of psychiatrist Richard Dudley, M.D. and neuropsychologist Stacey Wood, Ph.D. Dr. Dudley avers that Perry suffers from PTSD, personality disorder, major mood disorder, and substance-related disorder. He also avers Perry likely suffered from these conditions at the time of the crime. Based on tests she administered and review of available social history information, Dr. Wood concludes Perry has "significant cognitive impairment," of long-standing duration, including at the time of the crime.

---

[3] This claim is predicated on State Claim VIII, noted above, alleging Perry was denied the right to effective assistance of counsel when trial counsel failed to develop and present evidence of childhood neglect, abuse, trauma, and mental illness.

### IV. The Warden's Argument Regarding Non-Exhaustion of Federal Claims 4, 5, and 6

In his answer and accompanying points and authorities to Perry's federal petition, the Warden argues Claims 4 through 6 are unexhausted because evidentiary support for the claims presented to this Court was not presented to the California Supreme Court. That additional evidence, as noted above, consists of the declarations of Mr. Burnett, Ms. Colakovic, Dr. Dudley, and Dr. Wood. Citing to *Weaver v. Thompson*, 194 F.3d 359, 364 (9th Cir. 1999), the Warden claims the newly presented evidence fundamentally alters the legal claims presented and considered in state court.

### V. Standard for Holding Federal Proceedings in Abeyance for State Exhaustion

The parties do not disagree on the pertinent standard for abeyance. Under *Rhines v. Weber*, 544 U.S. 269, 275 (2005), federal courts have authority to hold federal proceedings in abeyance to permit a petitioner to exhaust federal remedies in state court. This invariably occurs with the petitioner files a "mixed" petition, that is, a petition containing both exhausted and unexhausted claims. To be eligible for abeyance, the petitioner must establish that there is good cause for his/her failure to exhaust the claims in state court in the first instance and that the claims are not plainly meritless. *Id*. at 277. The Warden also adds that a petitioner seeking abeyance cannot have engaged in dilatory conduct. *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008).

Although abeyance is to be granted only in "limited circumstances," *id*., the Supreme Court also has held:

> [i]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id*. at 278.

### VI. Perry's Argument in Favor of Abeyance

When Perry filed his federal petition on September 4, 2012, he held to the position that all claims alleged in the federal petition were fully exhausted, even with the addition of the four declarations

5

appended to the pleading. His position was that under extant Ninth Circuit authority the additional evidence did not fundamentally alter the nature of the claims previously presented to the California Supreme Court, so exhaustion was unaffected. He relied in particular on *Detrich v. Ryan*, 677 F.3d 958, 983 (9th Cir. 2012) for this proposition.

The *Detrich* opinion, however, was vacated when the Ninth Circuit decided to review the decision *en banc*, 696 F. 3d 1265 (9th Cir. Oct. 3, 2012). Accordingly, Perry now relies on *Gonzalez v. Wong*, 667 F.3d 965, 980 (9th Cir. 2011), *cert. denied* ___ U.S. ___, 133 S.Ct. 155 (2012), for the proposition that when a California habeas petitioner develops evidence supporting a previously unexhausted claim, *Pinholster* precludes consideration of that evidence in federal court and abeyance under the *Rhines* procedure is appropriate. *Id.* at 979-80.

Since he is now requesting abeyance, Perry sets out his position concerning the *Rhines* requirements. For the "good cause" requirement, Perry relies on statements made by Perry's state habeas attorney, Mr. Wells, that he was unable to develop the further evidentiary support in state court proceedings due to lack of adequate funding. With the $25,000 allocated for post-conviction investigation by the California Supreme Court, Mr. Wells exhausted those funds to develop social history evidence by hiring Ms. Tomioka to prepare a detailed social history.

The initial sources for Mr. Wells' position were the declaration of federally appointed counsel, D. Jay Ritt, appended to the moving papers, and reference to requests for additional funding included in the body of the state post-conviction petition. Responding to the Warden's hearsay objection, Perry provided in his reply an actual declaration from Mr. Wells substantiating Mr. Ritt's characterization of Mr. Well's statements.[4]

In his reply brief, Perry also points out that two California district courts, from the Eastern and Southern Districts,[5] have held that "excusable neglect" of state habeas counsel in presenting a claim to the California Supreme Court can constitute "good cause" under *Rhines*. Factors to be considered

---

[4] Perry also has pointed out that since the state petition was verified by Mr. Wells under penalty of perjury, his declaration should not have been necessary.

[5] The Eastern District case is *Corjasso v. Ayers*, 2:97-cv-0018 –GEB-GGH, Doc. 100, entered Mar. 9, 2006. The Southern District case cited is *Hoyos v. Cullen*, 2011 WL 11425 (S.D. Cal. Jan. 4, 2011).

when applying this standard include prejudice to the non-moving party, good faith of the moving party, length of the delay and its effect on efficient administration, and whether the delay was caused by factors beyond the control of the moving party.

Perry also reviews the allegations of the three claims, contending they satisfy the threshold requirement of "not plainly meritless." In his reply he clarifies that this standard requires only a facial examination of the unexhausted claim. This, he claims is supported by the language in the *Rhines* opinion that abeyance is appropriate where unexhausted claims are "potentially meritorious." 544 U.S. at 278. Perry also cites two Sixth Circuit district court opinions supporting the limited inquiry facial examination of the claims.[6]

He does not address the lack of dilatory litigation practices except to point out that the Warden hasn't articulated any.

**VII.   The Warden's Argument in Opposition to Abeyance**

The Warden's first argument is that the supporting declaration of Mr. Ritt is incompetent because it is comprised of unexcepted hearsay of Mr. Wells' position. Next, the Warden complains that the factual basis for good cause is lacking because there is no explanation as to how Mr. Wells allocated the $25,000 he received for investigation during state post-conviction proceedings or "who exactly" Mr. Wells wanted to hire as experts in the areas of mental health and ballistics. The Warden also maintains that $25,000 "is more than sufficient to investigate any potentially meritorious issues, and it is Petitioner's burden to clearly articulate the specific reasons why the amount was insufficient."

With respect to the potential merit of Claims 4, 5, and 6, and citing *Harrington v. Richter*, ___ U.S. ___, ___, 131 S.Ct. 770, 784 (2011), the Warden maintains that Perry has failed to meet his burden that there was no reasonable basis for the state court to have denied relief. As to Claim 4, the Warden maintains, since the victim was shot three times at close range and the trial defense was that Perry wasn't the shooter, Perry's trial counsel was not constitutionally ineffective for not focusing on

---

[6] The two cases are: *Bailey v. Lafler*, 2010 WL 4286352 (W.D. Mich. Sept. 29, 2010) and *Mack v. Bradshaw*, 2011 WL 5878395 (N.D.Ohio, Nov. 23, 2011).

ballistics evidence.[7]  He argues Claims 5 and 6 are equally without merit because, again, Perry has not shown that his trial counsel was constitutionally ineffective for not investigating mitigation theories because there is no evidence that Perry *told* his attorney about his deprived childhood or family problems.  The Warden faults Perry for not including his own declaration in support of his allegations (in both state and federal proceedings).

Finally, the Warden argues that Perry's reliance on *Gonzalez*, 667 F.3d 965, is misplaced because that case involved newly discovered evidence establishing the basis for a new claim, whereas here, the evidence which forms the bases for Claims 5 and 6 was "clearly known to Petitioner throughout trial, but he chose not to disclose the evidence, or make such evidence known to trial counsel."

**VIII.  Analysis**

The Court is persuaded that Perry has demonstrated Claims 4, 5, and 6 are not plainly meritless and that the appropriate inquiry is a limited facial examination.  The Court also agrees with Perry that the Warden's reliance on the *Richter* case for assessing potential merit of the Claims 4, 5, and 6 extends the *prima facie* case or "colorable claim" requirement beyond appropriate limits.  There is no reason to adjudicate any of the claims at this juncture; the issue is facial sufficiency.  The Court also is inclined to accept Perry's good cause explanation for not presenting the newly developed evidence to the California Supreme Court due to funding limitations.  Without revealing the content of case budgeting, the Court can assure the Warden that more than $25,000 has been expended in this case, and this is one of the most frugal capital cases on the Court's docket.  Further, the Court is satisfied that the good cause element is adequately supported by evidence in the form of the verified state petition and Mr. Wells' separate declaration.  The Court would invite the Warden, however, to respond to Perry's argument that the good cause requirement is satisfied by a showing of excusable neglect (or inexcusable neglect).

---

[7] The Warden fails to acknowledge Perry's penalty phase testimony admitting he in fact did shoot the victim, but that he did not intend to do so.

On the other hand, the Court does not agree with Perry that the now vacated *Detrich* opinion ever supported the proposition that this Court could consider the newly developed evidence without first undertaking an analysis as to whether the California Supreme Court summary denial was unreasonable pursuant to 28 U.S.C. § 2254(d)(1). In that case, the district conducted an evidentiary hearing on the issue of penalty ineffective assistance of counsel after making the "unreasonable" determination under § 2254(d)(1). During the hearing, the court received 87 exhibits and considered the testimony of six witnesses not presented to Arizona state courts. *Id*. at 970-71.[8] On appeal, the Ninth Circuit determined that the evidence received by the district court at the evidentiary hearing was properly received pursuant to 28 U.S.C. § 2254(e)(2) and *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388 (2011). Thus, the court was at liberty to consider the new evidence *de novo*. 677 F.3d at 972. Although Perry claims the circumstances presented in *Detrich* are similar to his case, the district court's § 2254(d)(1) analysis in *Detrich*, contrasted with the pre-merits determination stage of the present case, undermines the comparison.

The Court also does not agree that *Gonzalez* supports Perry's argument that abeyance in the present case is warranted.[9] In *Gonzalez*, the petitioner was able to develop additional evidence that amounted to an entirely new claim. Since the *claim* had not been exhausted, the Ninth Circuit found the appropriate course of action was to hold the federal proceedings in abeyance so exhaustion of state remedies could be completed. 667 F.3d at 979-80. In Perry's case, it is not at all clear that the three claims in question are unexhausted.

In order to satisfy the exhaustion requirement, a state petitioner must describe the operative facts and federal legal theory on which he grounds his claim so the state court as a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curium) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). Presenting supporting evidence to existing claims in federal court does not necessarily require

---

[8] The district found the trial attorney performed in a constitutionally ineffective manner, but that the deficient performance did not prejudice the defense. 677 F.3d at 971.

[9] The Warden's criticism that *Gonzalez* is inapposite is based on his assertion that Perry has demonstrated a lack of diligence. This argument is beside the point.

exhaustion of that evidence where the petitioner previously presented the substance of his or her claim(s) to the state court. *See Vasquez v. Hillery*, 474 U.S. 254, 257-58, 260 (1986) (rejecting challenge to new evidence because it did not fundamentally alter the legal claim the state courts previously considered).

In the present case, all three claims at issue appear to be exhausted. The state petition set forth the legal bases for the claims, a comprehensive recitation of the operative facts, and even referred to professional literature in support of the allegations. In its informal response to the state petition, the People of the State of California (represented by the same attorney for the Warden herein) assailed the sufficiency of Claims VI, VII, VIII, IX, and X for not being accompanied by adequate evidentiary support. The State argued there was no proffer of what a ballistics expert would testify about as to Claim VI; there were no *qualified* mental health experts to testify about Perry's alleged mental impairments as to Claims VII, VIII, IX, and X; and there was no corroboration for much of the background information, also as to Claims VII, VIII, IX, and X.

The Court is concerned that because Claims 4, 5, and 6 appear to be exhausted (notwithstanding the Warden's argument to the contrary), abeyance is inappropriate under *Rhines*. Accordingly, the Court invites the Warden to explain in a supplemental brief how the presentation of evidentiary support for existing claims fundamentally alters those claims. The Court also would welcome any clarification of the position taken by the State during state habeas proceedings as to the importance of the argument that the state claims were not properly substantiated.

**IX. Order**

The Warden is directed to file a supplemental brief consistent with this order by June 24, 2013. Should further briefing from Perry be indicated, the Court will request it. Otherwise the matter will stand submitted.

Dated: <u>May 31, 2013</u>

<u>/s/ Anthony W. Ishii</u>
Anthony W. Ishii
United States District Judge

10